J-A17001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LOBAR ASSOCIATES, INC. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| EDWARD J. O'NEILL AND CARLA C. O'NEILL, H/W | | |
| Appellant | | No. 3525 EDA 2016 |

Appeal from the Judgment Entered October 13, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2015-001654

BEFORE:  GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

DISSENTING MEMORANDUM BY RANSOM, J.:  **FILED NOVEMBER 17, 2017**

I respectfully dissent.  In my view, the Majority memorandum does not sufficiently address Appellants' assertion that they will not derive an immediate use or benefit from improvements made to property that they own.

This is an appeal from an order granting summary judgment in a Mechanics' Lien action.  The Mechanics' Lien is a statutory remedy, and any questions of interpretation should be resolved in favor of a strict, narrow, construction.  *See Denlinger, Inc. v. Agresta*, 714 A.2d 1048, 1052 (Pa. Super. 1998).  Strict compliance with the statute is required.  *See Murray v. Zemon*, 167 A.2d 253, 255 (Pa. 1960).  Regarding leased premises, the statute provides that:

_____

[*] Retired Senior Judge assigned to the Superior Court.

No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises unless it shall appear in writing signed by such owner that the erection, construction, alteration or repair was in fact for the immediate use and benefit of the owner.

49 P.S. § 1303(d). As the majority notes, *Murray* further instructs that:

The fact that the [owner] had knowledge of and consented to the repairs made is not in itself sufficient. If the law were otherwise, the cost of almost every alteration made by a tenant could be the subject of a lien against the owner. In order for the claim to be valid against the estate of the owner, where he is not a party to the [construction] contract, his consent must appear in the form of a written statement, signed by him, and which shall also state that the improvement is made for his immediate use and benefit. This is a condition precedent. The claim filed must on its face show the existence of such consent to satisfy this requirement. Every mechanics' lien must be self-sustaining.

*Murray*, 167 A.2d at 255-56.

Appellants assert they received no immediate use or benefit and aver, relying on *Boteler v. Espen*, 99 Pa. 313 (1882), that whether the lessor retains improvements made does not impact the immediate benefit analysis, where costs for improvements are clearly borne by the lessee. Although *Boteler* is an ancient case and pre-dates the current statute, it is cited favorably by the Supreme Court in *Murray*. *See Murray*, 167 A.2d at 256.

Here, the trial court concluded that the improvements made by Carmel were for Appellants' immediate use and benefit.[1] *See* Trial Court Opinion

---

[1] Although the trial court asserts that the central purpose of the lease was "for the construction of the improvements at issue," such an assertion is an inaccurate characterization that is not supported by the record or the lease at issue, and may refer solely to Appellants' agreement to cover certain required

(TCO), 2/6/17, at 8. The trial court supported this conclusion, noting that 1) the lease required Appellants to pay for structural improvements; 2) Appellants agreed to cooperate in the construction, permitting, and approval process; and 3) Appellants became the owner of all improvements at the conclusion of the lease. *See* TCO at 8.

The Majority agrees and relies on ***American Seating Co. v. City of Philadelphia***, 256 A.2d 599 (Pa. 1969), to support its affirmation of the trial court. Specifically, the Majority notes that a signed lease agreement between an owner and a tenant, allowing for construction and improvements on the leasehold, is sufficient to satisfy the "writing" requirement of the statute, provided the lease shows the improvements will redound to the owner's benefit. *See* Majority Mem. at 7 (citing in support ***American Seating***, 256 A.2d at 603). However, this case is distinguishable from the situation herein.

In ***American Seating***, a contractor filed a mechanics' lien claim against the landlord interest of the City of Philadelphia in the Spectrum Sports Arena. *Id.* at 600. The property and building were owned by the City but maintained by a lessee, who entered into a contract with American Seating to replace substantially all of the seating in the arena. *Id.* When the lessee defaulted under his agreement to pay the balance owed under the contract, American Seating sued the lessee and the City. *Id.* The primary contention in this case was whether the mechanics' lien was appropriate where the landlord was a

---

structural repairs. *See* TCO at 8; *see also* Lease, 11/15/12, at 1-32 (noting that initial use of leased space is the operation of a table service restaurant).

public entity; the Court determined the unique circumstances present rendered the City's role quasi-private, or profit driven. *Id.* at 601-02. The Court only briefly examined whether the City had received an immediate benefit from the improvements. It noted that the City had entered into the contract in part to secure additional revenue from sports and entertainment events, as well as from conventions; this benefit was acknowledged in the lease itself. *Id.* at 602-03. That is not so in the instant matter.

First, in the instant matter, the lease was not entered into to secure additional revenue, as in *American Seating*. The lease between Carmel and Appellants was for a restaurant alone; there was no additional benefit or increased revenue beyond that which would normally be garnered by rental payments. *See Murray*, 167 A.2d at 256 (concluding that the continuance of rent was an "indirect rather than an immediate" benefit resulting from improvements). Second, in *American Seating*, the lease specifically stated that the additional seating was for the benefit of the City; there is no such provision in the instant case. *See American Seating*, 256 A.2d at 602-03.

Most importantly, the improved seating in *American Seating* could be immediately used by the City, and indeed, was commissioned for that purpose. *See American Seating*, 256 A.2d at 600. In the instant case, although ownership of the improvements reverted to Appellants following Carmel's default, the improvements were not of immediate use or benefit to Appellants. Appellants are the owners of the building, not restaurateurs themselves. Any use of the improvements would depend on finding another

- 4 -

tenant, and even in that case, there is no guarantee the improvements would be utilized or retained by a subsequent restaurant. Moreover, there is no guarantee that a future tenant would require the property for a similar use.

The fact that Appellants had knowledge of and consented to the repairs *is not sufficient*. **See Murray**, 167 A.2d at 255-56. For a lien to be valid, where the owner is not party to the construction contract, his "consent must appear in the form of a written statement, signed by him, and which shall also state that the improvement is made for his immediate use and benefit." **Id.** This is a condition precedent, and that condition has not been met in the instant case. **See Murray**, 167 A.2d at 256.

Accordingly, I dissent.