Camdem Wood Turning Company *v.* Frank M. Malcolm, James A. Raney, Frederick J. Amweg and Edwin D. Hoffman, Owners, etc., and the Tradesmen's Trust and Saving Fund Company, actual and present owner, Appellant, and John J. Raney and Frederick J. Amweg, Contractors.

*Mechanics' liens—Building contract—Principal and subcontractors—Agreement against liens—Parol contract—Province of court and jury.*

A contracted in writing with B to build for him seventy-six houses under the supervision of C, an architect. The legal title of the land was in B but A, B & C were to divide the profits realized from the sale of the houses, after completion. The contract-contained an express waiver by A for himself and subcontractors of the right to file mechanics' liens. During the progress of the work, before any of the houses were completed, the subcontractor for the mill work failed financially. D contracted verbally with A, B & C to furnish the remainder of the mill work, on the orders of A & C. At the trial of the scire facias on a mechanic's lien entered by D, the evidence that there was no waiver to file liens by D was uncontradicted. *Held*, (1) that D was not a subcontractor under A, but a principal contractor under A, B & C; (2) that the evidence being uncontradicted there was nothing to submit to the jury, and it was proper for the court to direct a verdict for the plaintiff.

Argued Jan. 2, 1898. Appeal, No. 107, Jan. T., 1898, by defendants, from judgment of C. P. No. 3, Phila. Co., June T.,

1895, No. 36, on verdict for plaintiff.   Before Sterrett, C. J., Williams, McCollum, Mitchell, Dean and Fell, JJ.   Affirmed.

Scire facias sur mechanic's lien.   Before Gordon, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,971.08.   Defendants appealed.

*Error assigned* was the instruction of the court.

*Edwin D. Hoffman,* for appellant.—The case was for the jury: Menner v. Del. & Hudson Canal Co., 7 Pa. Superior Ct. 135; McFarland v. Newman, 9 Watts, 59; Brubaker v. Okeson, 36 Pa. 519; Maynes v. Atwater, 88 Pa. 496; Forrest v. Nelson, 108 Pa. 481; Stoddart v. Price, 143 Pa. 537; Hineman v. Matthews, 138 Pa. 204; Speers v. Knarr, 4 Pa. Superior Ct. 80; Bixler v. Lesh, 6 Pa. Superior Ct. 459; Waters v. Wolf, 2 Pa. Superior Ct. 200; Bank v. Donaldson, 6 Pa. 179; Madara v. Eversole, 62 Pa. 160; Reel v. Elder, 62 Pa. 308; Grambs v. Lynch, 20 W. N. C. 376; Coal Co. v. Evans, 176 Pa. 28.

*W. Horace Hepburn,* for appellee.—When it is alleged and proved by a plaintiff that a certain fact exists, and that fact is admitted by the defendant, either by the pleadings or by the witnesses for the defendant, and that fact is the controlling fact of the case, there is nothing for the jury to determine: Hyatt v. Johnston, 91 Pa. 196; Longenecker v. Penna. R. Co., 105 Pa. 334; McKnight v. Bell, 135 Pa. 372; Holland v. Kindregan, 155 Pa. 156; Van Billiard v. Nace, 1 Grant, 233.

Opinion by Mr. Justice Dean, February 20, 1899:

Frank M. Malcolm, one of defendants, was the owner of seventy-six vacant lots of ground in the city of Philadelphia. On the 21st of May, 1894, Malcolm entered into a written contract with John J. Raney, whereby Raney agreed to build for Malcolm a house on each lot; the building to be done under the supervision of and with the approval of Frederick J. Amweg, architect.   The contract contained an express waiver by Raney

for himself and subcontractors, of the right to file mechanics' liens. Raney contracted with George S. Yerkes, for the mill work of the houses, but during the progress of the work, the latter failed financially; this was in the latter part of October, 1894. At that time, the buildings were in different stages of approach towards completion, but none of them were as yet ready for occupancy. It appeared, that although the legal title to the land was in Malcolm, yet in fact, he, Raney and Amweg were all interested in the operation, and that they were to divide the profits realized from a sale of the houses after their completion. The failure of Yerkes resulted in a stoppage of the work on the buildings; Amweg then called upon the Wood Turning Company, the appellee, and solicited it to furnish the remainder of the mill work which Yerkes was unable to furnish; a conference was afterwards had between Malcolm, Raney and Amweg, and the representatives of the company, and it was verbally agreed that the company should furnish such mill work as was necessary to complete the houses, having respect to the quantity and kind needed for that purpose. A plan showing the different stages of the work on the unfinished houses was furnished the company; orders were to be given to the company by Raney and Amweg for the mill work which orders were to designate what houses and in what blocks the worked material was to be delivered to. The company went on and furnished the work to complete the houses; not having been paid, it filed eight liens specifying the quantities and kinds of material in each lien put in the houses against which liens were filed. The amount claimed was $1,609.06. Scire facias having issued thereon, "The Tradesmen's Trust and Saving Fund Company," which by reason of suretyship for Malcolm to parties who had advanced money to him in his building operations, had become the owner of the premises, filed affidavit of defense, averring the waiver of Raney, for himself and subcontractors, of the right to file liens, and that the Wood Turning Company was a subcontractor under Raney. At the trial, Malcolm, Raney and Amweg, in substance, testified, that the Wood Turning Company contracted to furnish the mill work to finish the buildings, and did furnish it; that not Raney alone, the principal contractor, but Malcolm, the owner of the legal title, as well as Amweg, the architect, took part in making the contract, and

that Malcolm agreed to stand by any contract Raney and Amweg made; that the bargain had nothing to do with Yerkes's contract which stipulated a waiver of the right of lien. This testimony was in exact accord with that of Stevens, the fore-man of the company, who was its active agent in bargaining for the work. There was no evidence which contradicted this; therefore, the trial judge peremptorily instructed the jury to find for the plaintiff the amount of its liens. We now have this appeal by the Trust and Saving Fund Company, assigning for error the peremptory instruction of the court.

It is argued, that the waiver of the right to file a lien was express and in writing; that the effect of the verbal contract with the company, was to establish a waiver of this part of the written contract by Malcolm, the owner, with Raney. And the authorities, from McFarland v. Newman, 9 Watts, 59, down to Fulton v. Lancaster County, 162 Pa. 294, are cited in support of the principle, that the construction of an oral agreement is for the jury, and that parol evidence modifying or changing a written contract, when such evidence is admissible, draws the whole from the court and leaves it to the jury to find what the contracting parties said, and what they meant by what they said. No one doubts the soundness of this rule, but it is wholly with-out application to the facts before us. The Wood Turning Company was not a subcontractor under Raney, but a principal contractor, who undertook to supply the material needed to fin-ish the houses. This is the undisputed testimony of each of the four individuals who participated in the oral bargain, which was, not to complete Yerkes's contract or Raney's, but to com-plete the houses on an independent contract, and one of the parties to the contract was the owner himself. Raney's con-tract with Malcolm and Yerkes's contract with Raney, were completely ignored; the new contract was between new parties, so far as concerned their situation with reference to the prop-erty; Malcolm, Raney and Amweg, no longer as owner, principal contractor and architect, but all, as nominal owners interested in the early completion of the work, so that the houses could be put upon the market, on the one side, and the Wood Turning Company, as a new and independent contractor, on the other. There was no written waiver of the right to file liens to be waived, for none having any connection with the new contract was in

existence.    As all the parties having any knowledge agreed on what was said, and what was meant by what was said, there was nothing for the jury, and the court was right in directing a verdict for plaintiff.    If there had been any contradictory evidence, or evidence tending to show that Raney on the failure of Yerkes, had contracted with the Wood Turning Company to complete for him Yerkes's contract, then there would have been a case for the jury, and the authorities cited would have been in point.

The judgment is affirmed and the appeal dismissed at costs of appellants.